[No. 14833.  Department Two.  September 24, 1918.]

LILLIAN M. FRIEDMAN, *Respondent*, v. W. F. PADMORE *et al., Appellants.*[1]

CORPORATIONS—STOCK—SALE—CONTRACT — CONSTRUCTION. Where plaintiff sold 10,000 shares of capital stock to defendant, by contract providing that 3,000 shares were to belong to the buyer on payment of $2,500, and same was to be pledged to secure the performance of the buyer's agreement to save the seller harmless from her indebtedness to the company on account of advancements of future dividends, and the balance, 7,000 shares, to be placed in escrow until paid for, and all except the 3,000 shares to be fully forfeited as liquidated damages in case of default in payments, it was not intended to require a payment of the advances made in any event, but only to save harmless therefrom if the contract be fully performed; and the contract having been forfeited by the seller as to the 7,000 shares for defaults, it carried its own measure of damages in the sums paid and forfeited, and the seller cannot recover anything in addition, the 7,000 shares being burdened for advances as if no contract had been made.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered December 24, 1917,

[1]Reported in 175 Pac. 163.

in favor of the plaintiff to foreclose a pledge, tried to the court. Reversed.

*Voorhees & Canfield,* for appellants.

*A. E. Barnes,* for respondent.

CHADWICK, J.—The respondent and two others were the owners of the capital stock of the Cascade Laundry Company, a corporation doing business in the city of Spokane. The company was a going concern, but had never formally paid any dividends. It had, however, advanced money to the stockholders from time to time as their necessities required.

Respondent owned 10,000 shares of the stock. At a meeting of the stockholders held on October 7, 1914, respondent being present with the others, a resolution was passed in which the several advancements were ratified and confirmed, and the policy of the company to continue its practice was declared. The resolution further recited:

"Whereas, it is the intention of all parties concerned that said amounts so advanced shall be considered as payments out of the dividends to be derived from the company, now, therefore, be it resolved, that all advances heretofore and hereafter made to F. G. Meeks, W. J. Doust and Mrs. Friedman shall be considered to be made on account of dividends to be paid by the company, and that when a dividend or dividends shall be declared, the amounts theretofore advanced to them as aforesaid shall be deducted therefrom."

On the 31st day of May, 1915, respondent entered into contract with the appellant for the sale of her 10,000 shares of stock. At this time she had received advancements aggregating $2,061.43. The contract was in writing, and it was agreed that the purchase

price was to be $8,500, and that the defendants would save respondent

"—harmless in respect of that certain indebtedness hereinbefore mentioned owing by the party of the first part to the Cascade Laundry Company, in the sum of $2,061.43, on account of advancements of future dividends upon said stock, and to secure the full and faithful performance of said guaranty, the said certificate for 3,000 shares shall be and remain a pledge to insure the performance thereof. The remaining certificate for 7,000 shares shall not pass to the party of the second part until all sums and interest thereon have been fully paid.

"That the certificates of stock shall be deposited and remain with the agreement until the full performance or breach of the contract. The said certificate for 3,000 shares shall become the property of the party of the second part after the payment of $2,500 in cash has been made, but subject always to the pledge of said certificate and said shares as a guaranty as against the said sum of $2,061.43 as aforesaid."

The contract further provides that, in case of default in any of the terms and conditions, the remaining 7,000 shares of stock should revert to and become the property of the respondent, and that all sums paid should be forfeited as liquidated damages, "except said certificate of 3,000 shares."

The stock was represented in a single certificate for 10,000 shares. During the negotiations and before they were concluded, the parties made and signed an additional memorandum:

"(B) For the purpose of modifying the original agreement it is hereby agreed that the party of the first part shall endorse her certificate for 10,000 shares to W. F. Padmore and put the same in escrow, and whenever the party of the second part (Padmore) shall desire so to do, the said certificate of 10,000 shares of stock shall be apportioned in accordance with paragraph 5 of the original agreement. This agree-

ment is intended only for a temporary expedient until they desire to turn over a portion of said certificate to the party of the second part."

The contract and the memorandum modifying it, together with the certificate for 10,000 shares and six promissory notes to be paid one each year following until the whole purchase price was paid, were deposited in escrow in the Old National Bank at Spokane. The parties subscribed to the following memorandum indorsed on the envelope containing the escrow:

"From—Lillian M. Friedman. Residing at—918 So. Lincoln St., Spokane, Wash. To—W. F. Padmore. Residing at—Spokane, Wash. Conveying the following described property: 10,000 shares of the capital stock of the Cascade Laundry Co. This envelope also contains six $1,000 notes. Deliver inclosed papers to W. F. Padmore upon final payment to you of the sum of $6,000 in the amounts and at the times stated, as follows: $1,000 June 1st, 1916; $1,000 June 1st, 1917; $1,000 June 1st, 1918; $1,000 June 1st, 1919; $1,000 June 1st, 1920; $1,000 June 1st, 1921. Interest at 7 per cent; payable annually. In the event of failure to pay any sum or sums within periods stated for such payment, you are hereby authorized to at once return all papers to Lillian M. Friedman, upon demand, and all sums already paid shall be forfeited to the grantor as liquidated damages.

"These papers are left with you in escrow; and it is hereby understood and agreed that you are released from any and all claims whatsoever that may be made upon you; except as to the delivery of money and papers as above directed.     Lillian M. Friedman, "Spokane, Wash., 6-15-15.   W. F. Padmore."

On the same day, appellant paid respondent the sum of $2,500 in cash. The matter was attended to for respondent by her son-in-law, who was a witness to the contract and the memorandum modifying it.

Respondent, who had been a trustee and officer of the corporation, resigned at that time and appellant

W. F. Padmore became an active participant, if not the real manager, of the company. On August 24, 1915, the trustees of the company passed a resolution in part as follows:

"The said 10,000 shares of stock belonging to Lillian H. Friedman being encumbered upon the books by a charge of $2,061.43 advanced to her to be charged as against any dividends which might accrue to said stock as provided for in the minutes of the meeting of stockholders held on October 7th, 1914, it is agreed and understood that said W. F. Padmore in acquiring the same takes said stock subject to the liability of any dividends therefrom to be first applied upon said book charge, and that said charge be continued against said stock, and that as to Lillian H. Friedman said book charge be now closed and discharged."

Respondent's account was closed and carried over under the name of W. F. Padmore. Padmore testifies that he took this resolution to respondent and that he exhibited the minutes of the meeting of the trustees, and it was agreed between them that the certificate for 10,000 shares of stock should be redelivered by the bank and that the company should reissue two certificates, one for 7,000 shares and one for 3,000 shares, as contemplated in the original agreement. Respondent denies that there was any such understanding; but however that may be, we are convinced from a reading of the entire record that respondent is mistaken, for on the next day her son-in-law, who seems to have been active in the management of this affair, went with Padmore to the bank and the stock was taken out and split into certificates, the one for 3,000 shares being retained by Padmore, and the other, for 7,000 shares, being redeposited as an escrow.

In addition to the $2,500, appellants have paid $431.50, and respondent received a dividend thereafter declared in the sum of $562.25. Appellants had also

paid $225 on account of interest, but from our view of the case this item becomes immaterial.

Appellants having defaulted on the payment of the first of the $1,000 notes due at the bank, respondent gave written notice of forfeiture and took the papers out of the bank, giving the following receipt:

"10-28-16, received enclosed certificate No. 36 for 7,000 shares Cascade Laundry Company stock. Escrow closed by forfeiture. Lillian M. Friedman."

On January 15, 1917, the bank delivered the six notes aggregating $6,000 to appellant W. F. Padmore, taking a receipt as follows: "1-19-17, received six notes aggregating $6,000. W. F. Padmore." In February, 1917, the Cascade Laundry Company declared a dividend of 6 per cent, which amounted to $420 upon the 7,000 shares of stock then owned by respondent. The company refused to pay this dividend in cash to respondent, whereupon she brought this action to foreclose the pledge which had been made between the parties in the first instance. The court found that there was due respondent the sum of $1,548.70, together with interest from the first day of January, 1917, at the rate of 8 per cent per annum.

We have been unable to ascertain from the record or from respondent's brief just how the court arrived at these figures, for it is clear that, under respondent's theory of the case, there could have been no more than $1,067.78 due at the time.

It is the theory of respondent that appellants agreed to pay $2,061.43 in any event, while it is the theory of appellants that they were to receive a certificate for 3,000 shares of the stock and save respondent harmless from any liability arising out of the advancements. That appellants were to have 3,000 shares upon the payment of $2,500 is clear from a reading of the entire contract. The contract fixes the penalty in case

of default in the performance of the contract treated as an entirety. It is:

"That whenever default in the payment of any of the different sums specified herein and the interest as provided by this contract is made, the fact thereof shall forfeit this contract and all sums theretofore paid hereon, and all stock as herein provided shall be fully forfeited to the party of the first part as liquidated damages, except said certificate of 3,000 shares."

It follows that, although the parties had agreed that the certificate for 3,000 shares should stand as a pledge for the performance of the whole contract, it was within their power, and they so contracted, that, if the whole contract was not performed, the damages which would follow would be measured finally and forever by the sums paid in the performance of the whole contract. In other words, the charge against the stock now owned by respondent would be released *pro tanto* to the extent of the payments made by appellant, and she would take the 7,000 shares as if no contract had ever been made.

Our construction of the contract is that it does not call for a payment of $2,061.43 in money in any event, but is a contract only to save respondent harmless of the possibility of having to repay the company for the money it had advanced if the contract had been performed, and that the contract having been forfeited and carrying its own measure of damages, respondent cannot now recover anything in addition to the amount paid by appellants, and that her remaining stock is burdened as if no contract had been entered into.

The decree of the lower court is reversed, with directions to enter a decree of dismissal.

MAIN, C. J., MOUNT, HOLCOMB, and MACKINTOSH, JJ., concur.